IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                                              PLAINTIFF

vs.                                    Criminal No. 6:10-CR-60013-001

DONALD COLLIER                                                                         DEFENDANT

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On July 13, 2010, Defendant filed a Motion to Suppress physical evidence seized as a result of the search of Defendant's motor vehicle. (Doc. No. 27).[1] On July 23, 2010, the Government filed its response to Defendant's Motion to Suppress. (Doc. No. 34). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), United States District Judge Robert T. Dawson referred Defendant's Motion to Suppress to the undersigned on July 16, 2010 for the purposes of making a report and recommendation. (Doc. No. 31). A hearing on this motion was held on August 2, 2010. The Court, having reviewed the testimony and exhibits presented at the hearing, the arguments of counsel, and the relevant briefing, recommends that Defendant's Motion to Suppress be **DENIED.**

**1.  Facts and Procedural History**[2]

On March 29, 2010, Sergeant Dennis Overton with the Arkansas State Police conducted a traffic stop on a Chevy Impala vehicle traveling eastbound on Interstate 30, in Clark County,

---

[1] The docket numbers are referenced by the designation "Doc. No."

[2] The relevant facts are taken from the hearing on August 2, 2010 and the briefing of the parties. Sergeant Dennis Overton testified at the hearing on behalf of the Government and he was the only witness to testify at the hearing.

Arkansas. Before conducting the traffic stop, Sgt. Overton observed the vehicle traveling below the 70 mile per hour speed limit in the inside lane of the Interstate, with several vehicles traveling behind it. Traveling in the outside lane was a large truck. The cars traveling behind the Impala were unable to pass either the Impala or the large truck.

After a few minutes, Sgt. Overton caught up with the the Impala and it moved into the outside lane. Sgt. Overton then followed behind the vehicle while he called the car's Missouri license plate number into dispatch for a registration check. It took a short period of time for dispatch to attempt to obtain the registration information for the license plate number, and after more than a minute, the dispatcher notified Sgt. Overton the license plate did not appear to be on file in Missouri. Sgt. Overton then initiated a traffic stop on the vehicle for two traffic violations, (1) impeding the flow of traffic, and (2) failure to operate vehicle with valid license plates.

After the stop, Sgt. Overton approached the car and discovered that Portia McGuire, ("McGuire") a co-defendant in this case, was driving the vehicle. The defendant, Donald Collier, ("Collier") was the sole passenger and was seated in the front seat. After speaking with both occupants of the vehicle, Sgt. Overton determined Collier had rented the car in St. Louis, Missouri and was the only listed driver on the rental contract. Collier produced a rental car agreement and McQuire was not an authorized driver under the terms of the rental agreement.

Sgt. Overton then asked McGuire to get out of the car and talk with him near the hood of his patrol car while he prepared a traffic violation citation. McGuire indicated she and Collier had been in Dallas, Texas, visiting Collier's uncle who had been hospitalized with a heart related condition. Sgt. Overton then questioned McGuire about one of the traffic violations involving impeding of traffic. McGuire indicated she was aware of the line of cars behind her, unable to pass as she drove

in the inside lane. Sgt. Overton informed McGuire the inside lane was for passing only. McGuire indicated there had been trucks in the outside lane, and she had earlier moved to the inside lane and decided to continue to drive in it. During this questioning, McGuire exhibited signs of extreme nervousness with heavy breathing and elevated heart rate. McGuire also provided Sgt. Overton her consent to search the car.

Sgt. Overton then returned to the car to speak with Collier. Prior to this, Sgt Overton had determined Collier had a suspended drivers license from New Mexico. Collier gave an inconsistent statement to Sgt. Overton on the purpose of the trip. Collier indicated they had been visiting his uncle in Dallas who had been hospitalized for dialysis. During this conversation, Collier also provided Sgt. Overton consent to search the car.

During a subsequent search of the car, a bundle wrapped in plastic and tape was found in the center console that was believed by Sgt. Overton to be a kilogram amount of cocaine. The package of suspected cocaine was seized. Collier and McQuire were arrested. Later testing determined this package contained approximately 480 grams of cocaine.

## 2. Applicable Law

Defendant Collier argues the search of the vehicle in question was made in violation of the Fourth Amendment to the United States Constitution. (Doc. No. 27, Pg. 1). The Government argues the traffic stop of Collier's vehicle was reasonable under the Fourth Amendment and the subsequent search of the vehicle was made with the consent of both Collier and McGuire. (Doc. No. 34, Pg. 2-4).

As a general matter, the decision to stop an automobile is reasonable under the Fourth Amendment, where an officer has probable cause to believe a traffic violation has been committed.

*See Whren v. United States*, 517 U.S. 806, 810 (1996). "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Adler*, 590 F. 3d 581, 583 (8th Cir. 2009) (quoting *U.S. v. Wright*, 512 F. 3d 466 (8th Cir. 2008). Even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an objectively reasonable one. *See United States v. Washington*, 455 F. 3d 824, 826 (8th Cir. 2006). Also, the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officer involved as the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Further, even if a traffic stop is determined to be invalid, subsequent voluntary consent to a search may purge the taint of the illegal stop if it was given in circumstances that render it an independent, lawful cause of the officer's discovery. *United States v. Becker*, 333 F 3d 858, 861-862 (8th Cir. 2003). Consent is voluntary "if it was 'the product of an essentially free and unconstrained choice by its maker,' rather than 'the product of duress or coercion, express or implied.'" *See United States v. Chaidez*, 906 F.2d 377, 380-81 (8th Cir.1990) (quoting *Bustamonte*, 93 S.Ct. at 2047).

**3. Discussion**

Defendant Collier argues the search of the vehicle in question was made in violation of the Fourth Amendment as the officer did not have probable cause to believe a traffic violation had been committed. (Doc. No. 27, Pg. 1).

Based on the testimony of Sgt. Overton, as discussed above, there was probable cause to believe two traffic violations had been committed. According to the testimony of Sgt. Overton, the car being driven by McGuire, was impeding the flow of traffic, a violation of Ark. Code Ann. §

27-51-301(b). This statute provides: "Motor vehicles shall not be operated continuously in the left lane of a multilane roadway whenever it impedes the flow of other traffic."

Sgt. Overton also had probable cause to believe a second traffic violation had occurred before he initiated the traffic stop because dispatch could not obtain any return information from the vehicle's license plate. According to Ark. Code Ann. § 27-14-304, vehicles driven on highways in Arkansas must have valid license plates, and a violation of this law is a misdemeanor offense. Sgt. Overton testified he followed behind the vehicle in question while he called the car's Missouri license plate number into dispatch. It took a period of time for dispatch to attempt to run the license plate, and after more than a minute, the dispatcher notified Sgt. Overton the license plate did not appear to be on file in Missouri. Because of the foregoing, the initial traffic stop was valid.

Both McQuire and Collier consented to the search of the vehicle. A portion of the traffic video from the instant traffic stop was shown for the Court at the hearing.[3] This video clearly shows both Collier and McGuire providing their consent for the search of the vehicle. There is no evidence on the video recording or from any witness that the consent given was coerced or was obtained by any improper method or technique. Collier does not argue that his consent was involuntary. Accordingly, the officers had valid consent to search the vehicle following the traffic stop.

**4. Conclusion**

Based upon the foregoing, this Court recommends Defendant's Motion to Suppress (Doc. No. 27) be **DENIED**.

**Within fourteen (14) days after receipt of the magistrate judge's report, any party may**

---

[3] A copy of the entire video recording of the instant traffic stop ans subsequent search was introduced as an exhibit at the hearing. The parties agreed to play that portion of the video up to the point of Collier's consent.

**serve and file written objections to the findings and recommendations of the magistrate judge.** *See* **28 U.S.C. § 636(b)(1)(C).  Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days after service will bar an aggrieved party from** *de novo* **review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the court except on grounds of plain error or manifest injustice.**

      **ENTERED** this **9th day of August, 2010.**

      /s/  Barry A. Bryant
      HON. BARRY A. BRYANT
      U.S. MAGISTRATE JUDGE